IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-61735-Civ-Zloch

| | |
|---|---|
| BROWARD BULLDOG, INC., a Florida corporation not for profit, and DAN CHRISTENSEN, founder, operator and editor of the BrowardBulldog.com website, | )<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) |
| U.S. DEPARTMENT OF JUSTICE, 950 Pennsylvania Avenue, NW Washington, DC 20530, and FEDERAL BUREAU OF INVESTIGATION, 935 Pennsylvania Avenue, NW Washington, DC 20535, | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

Plaintiffs' Citations to Record Materials
<u>Supporting Declaration of Thomas R. Julin</u>

Pursuant to the Court's order of July 8, 2019, DE-111, the Plaintiffs, Broward Bulldog, Inc. and Dan Christensen ("the Bulldog"), provide the following citations to documents and docket entries in *Broward Bulldog, Inc. v. U.S. Department of Justice,* Case No. 16-61289-cv-CMA (Altonaga, ), and to additional documents, which support the statements made in the Declaration of Thomas R. Julin, DE-99-1 in this case.

1. The Julin Declaration states at ¶ 114 that the FBI removed redactions of the name of the al-Hijji family and the name of FBI Special Agent Jacqueline Maguire from records produced. This statement is supported by a letter dated January 27, 2017, which the FBI sent to the Bulldog indicating that the FBI no longer would redact Maguire's name from a document

GUNSTER, YOAKLEY & STEWART, P.A.

dated April 30, 2014. That document summarized the FBI's investigation of the al-Hijji family for the Meese Commission. The January 27, 2017, letter and the re-released April 30, 2014, document is Attachment 1.

2. That part of Julin Declaration ¶ 114 relating to the FBI's identification of the al-Hijji family is supported by the FBI's release of a further revision of the April 30, 2014, document. The FBI removed its redaction to show the al-Hijji name in reaction to an Order that Judge Altonaga entered on February 27, 2017. That Order stated:

> The Government has not met its burden of showing disclosure of the names would constitute an invasion of privacy. Further, it has not addressed whether the invasion would be severe and whether the public's interest in disclosure outweighs any potential invasion of privacy. (See generally Mot.; Hardy Decl.). This is problematic given Plaintiffs' contention a significant public interest exists in learning about the FBI's investigation of the Al-Hijjis and showing the requested information is likely to advance this public interest. See Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004) (when Exemption 7(C) is present, a citizen requesting information under the FOIA "must show that the public interest sought to be advanced is a significant one . . . [and] must show the information is likely to advance that interest" (alterations added)). There are questions of material fact whether disclosing the names would constitute an unwarranted invasion of privacy and whether the public interest in knowing this information is paramount. Indeed, based on the record, it seems the names should be unredacted because Exemptions 6 and 7(C) are not applicable.

DE-58 (Case No. 0:16-CV-61289-CMA) at 13-14. Attachment 2. In response to that Order, the FBI filed with Judge Altonaga on March 14, 2017, a declaration by FBI records custodian David M. Hardy stating:

> In her order dated February 27, 2017, Judge Altonaga calls into question the validity of numerous FBI redactions made pursuant to FOIA Exemptions 6, 7C, and 7D. (See Docket No. 58.) The FBI has conceded to releasing portions of the information in question but believes that certain information remains exempt.

DE-66-1 (Case No. 0:16-CV-61289-CMA) at ¶36. Attachment 3. The FBI filed with Hardy's declaration the previously released April 30, 2014, document, DE-68-1 (Case No. 0:16-CV-61289-CMA) at 22, Attachment 4, but now showing not only Maguire's name, but also that the

Sarasota family under investigation was in fact the al-Hijji family. The FBI included a notation on that re-released document explaining: "The FBI conceeds [sic] to releasing the Al-Hiijjiis [sic] in this context. The discussion of Christensen's article below makes it apparent that the Al-Hiijjiis [sic] are the subject of this brief." The FBI also stated in a notation on this document: "The FBI conceeds [sic] to releasing the Al-Hiijjiis [sic] in this context. This is the FBI's summary of information released in a public notice." DE-68-1 (Case No. 0:16-CV-61289-CMA) at 22, Attachment 4.

4.      Consequently, it is the Bulldog's position that all redactions that the FBI has made of the names of the al-Hijjis -- Abdulaziz al-Hijji, Anoud al-Hijji, Esam A. Ghazzawi (father of Anoud al-Hijji), Deborah G. Brown (mother of Anoud al-Hijji) -- and of Special Agent Jacqueline Maguire in any of the 81 pages of documents that the FBI has identified in this case as responsive to the Bulldog's FOIA requests, DE-97-2, should be removed. The redactions serve no purpose whatsoever since the FBI has identified the al-Hijjis as the subject of the investigation and Maguire as an agent involved in that investigation.

5.      Julin Declaration ¶ 115 points out that the FBI produced in the case before Judge Altonaga a different version of a "white paper" titled "ALLEGED SARASOTA LINK TO 9/11 HIJACKERS," that the FBI also had produced to the Bulldog in the instant case. The "white paper" is significant because it purports to show that one week after the Bulldog on September 8, 2011, published on its website and in T*he Miami Herald* its report about the FBI's investigation of the al-Hijjis, the Justice Department consulted with its Guantanamo, Cuba prosecutors about the al-Hijjis and they advised on September 15, 2011,[1] that "the FBI found no evidence that

---

[1]   Both versions of the document are dated September 15, 2010, but the date of the document must have been intended to be September 15, 2011, because the document refers to the Bulldog's reporting of September 8, 2011.

3

connected the family members . . . to any of the 9/11 hijackers." If true, that would have cast doubt on the accuracy of the Bulldog's reporting. That first version was released to the Bulldog on March 28, 2013, together with the April 16, 2002, FBI memo, Attachment 5, DE-97-2 at 6-7, which stated just the opposite that the FBI had found "many connections" between the family under investigation and the 9/11 hijackers.

The first version of the "white paper" produced in the instant case is Attachment 6. DE-97-2 at 2-3. The second version of the "white paper" produced in the case before Judge Altonaga is Attachment 7. The two versions are distinct in that the first is on the letterhead of the Department of Justice Counterterrorism Division Government Detainee Prosecution Section 9/11 Section. The second, however, is not. In addition, the FBI's redactions of the two documents are completely different. The second version is more extensively redacted than the first.

The existence of the two different versions of the same document suggests: (1) the FBI's search for responsive documents in the instant case was inadequate and may have been deliberately incomplete in that it failed to locate the second version of the document and perhaps other documents which would shed light on why two versions exist, and (2) the first version of the document did not originate from the Guantanamo prosecution unit at all, but was manufactured to create the false impression that the Bulldog's reporting about the FBI's Sarasota investigation was inaccurate and that there were in fact no connections between the al-Hijjis and the 9/11 hijackers, when in fact the FBI had found just the opposite to be the case.

6. Julin Declaration ¶ 116 points out that the discrepancy between the two versions of these documents was the basis for the Bulldog seeking to depose FBI Special Agent Jacqueline Maguire who the FBI had identified in the April 30, 2014, document as the author of

the "white paper." She served as one of the FBI's lead investigators of the 9/11 events together with then-FBI Director Robert Mueller and should be able to testify whether the FBI has withheld documents responsive to the Bulldog's FOIA request in an unlawful effort to conceal evidence it found of Saudi government complicity with the 9/11 hijackers.

7. Julin Declaration ¶ 117 states that the FBI admitted in the case before Judge Altonaga that it had located on March 7, 2017, additional responsive document which "were believed to have been destroyed long ago" but were found "within a storage facility intact." This concession was made by the FBI in an email to counsel. A copy of the email is Attachment 8.

8. Julin Declaration ¶ 118 refers to a document produced by the FBI in the case before Judge Altonaga which reflects an FBI interview of Wissam Taysir Hammoud regarding Abdulaziz al-Hijji and asserts that although this document was clearly responsive to the FOIA requests that are the subject of the instant action, this record also was never produced by the FBI in the instant case or identified as responsive. A copy of the record produced in the case before Judge Altonaga is Attachment 9. The existence of this document and the FBI's failure to produce it in the instant case further reflects that the FBI's search for responsive documents was not adequate and that the FBI may be deliberately concealing documents which are evidence of Saudi government support for the 9/11 attacks. The redactions made to the document also were unsustainable inasmuch as the Florida Department of Law Enforcement had released its summary of the Hammoud interview without redacting the information that the FBI had redacted. Attachment 10.

9. Julin Declaration ¶ 19 asserts that in the litigation before Judge Altonaga, the FBI redacted the name of the FBI agent who had written the April 16, 2002, report which found, contrary to the FBI's public assertions, "many connections" between the al-Hijji family and the

9/11 hijackers. Julin Declaration ¶ 19 also asserted that the FBI had refused to produce its "Sarasota case file" which the Meese Report stated the Meese Commission had reviewed. This paragraph further stated that Judge Altonaga agreed with the FBI that this Court (Judge Zloch) should decide whether the Sarasota case file must be released.

The FBI's refusal to lift the redaction of the name of the FBI agent who wrote of the April 16, 2002, memorandum, is found in its redaction of that name from the April 30, 2014, memo containing that name. Attachment 4 (DE-68-1 at 24). The Plaintiffs believe that the name of the agent who wrote the report is Gregory Sheffield and they have reported this publicly. The FBI in refusing to identify the agent, stated:

> Plaintiff argues that the FBI employee's name has already been publically [sic] disclosed; however, any public disclosure of this individual's name has not been made public officially by the FBI. Plaintiff presumes the identity of this individual based on his own investigative reporting. A release by the FBI in this context would be an official confirmation by the FBI of this individual's identity. This would undoubtedly result in negative publicity as he/she would be connected with reporting deemed faulty by the FBI, and harassing questions that would seriously disrupt this individual's life and/or his/her ability to conduct official business. Releasing this information this context does not advance the public understanding of government operation enough to justify disrupting this FBI employee's life.

Attachment 4 (DE-68-1 at 24). Judge Altonaga rejected the FBI's claim that it could withhold the name of the agent, stating: "the Government continues to baselessly assert these individuals' privacy interests outweigh the public interest. Plaintiffs correctly point out that the Government's position is inconsistent because the Government maintained these redactions despite revealing the third parties' and FBI agents' names elsewhere." DE-99 at 21. Attachment 11. Judge Altonaga's order deferring to this Court's judgment concerning release of the "Sarasota case file" is found in her May 16, 2017, order, DE-99 at 19-20, which is Attachment 9. The FBI has appealed these aspects of Judge Altonaga's order and that appeal remains

pending in Eleventh Circuit Case No. 17-13787.  The Eleventh Circuit heard oral argument on July 19, 2018.

CERTIFICATE OF CONFERENCE WITH OPPOSING COUNSEL

Regarding the Court's direction requiring the parties to confer with respect to whether concessions the FBI made in the case before Judge Altonaga affect any documents in the 81 pages in this case, counsel for the Bulldog, Thomas R> Julin, sent an email to counsel for the FBI, Dexter Lee, on July 9, 2019, and requested a stipulation that any redactions of the names of the al-Hijjis or of Jacqueline Maguire occurring in the 81 pages should be lifted.

Mr. Julin then telephoned Mr. Lee on July 10, 2019, and spoke with him about the proposed stipulation  Mr. Lee advised that the government does not agree that the FBI's decision not to invoke an exemption in a particular situation constitutes a concession that the particular exemption would not apply in all instances.  He further advised, specifically, that the government does not agree that exemption (b)(6) cannot be invoked as to the al-Hijjis in any instance, or that disclosure of Special Agent Maguire's identity cannot be withheld under exemption (b)(6) or (7)(C), because those exemptions were not invoked in a particular situation.  Mr. Lee also indicated that the government will explain its reasoning in greater detail in the response it files to the Court's July 8, 2019, order.

Respectfully submitted,

Gunster, Yoakley & Stewart P.A.
Attorneys for Broward Bulldog, Inc., and Dan Christensen

By   s/ *Thomas R. Julin*
         Thomas R. Julin & Timothy J. McGinn.
         Florida Bar Nos. 325376 & 1000377
         600 Brickell Avenue - Suite 3500
         Miami, FL 33131
         305.376.6007 Fax 6010
         tjulin@gunster.com or tmcginn@gunster.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and through that filing served:

>Dexter Lee
>Assistant U.S. Attorney
>99 N.E. 4th St., Suite 300
>Miami, Florida 33132
>Dexter.Lee@usdoj.gov
>1. 305. 961.9243

s/ <i>Thomas R. Julin</i>
Thomas R. Julin