# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

**BROWARD BULLDOG, INC.**, *et al.*,

      Plaintiffs,

v.

**UNITED STATES DEPARTMENT
OF JUSTICE**, *et al.*,

      Defendants.

_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, the United States Department of

Justice and the Federal Bureau of Investigation's Motion for Summary Judgment on Count I

("Second MSJ") [ECF No. 66], and Motion for Partial Summary Judgment on Count I ("Third

MSJ") [ECF No. 83]. The Court has carefully considered the Motions; Plaintiffs, Broward

Bulldog, Inc. and Dan Christensen's Opposition memoranda [ECF Nos. 73, 87[1]]; Defendants'

Replies [ECF Nos. 79, 88[2]]; the parties' additional written submissions;[3] and applicable law.

## I. BACKGROUND

Plaintiffs bring this case against the Government under the Freedom of Information Act

("FOIA"), 5 U.S.C. section 552, seeking records from a commission created to investigate the

September 11, 2001 terrorist attacks (the "Meese Commission"[4]). (*See generally* Complaint

---

[1] Plaintiffs' Opposition memoranda are referred to as the Second and Third Response, respectively.

[2] Defendants' Replies are referred to as the Second and Third Reply, respectively.

[3] The submissions include Defendants' Statement of Undisputed Facts ("Defendants' SUF") [ECF No. 64], and Plaintiffs' Response ("Plaintiffs' SUF Response") [ECF No. 72].

[4] The Government refers to the Meese Commission as the 9/11 Review Commission.

[ECF No. 1]).  The Court summarized the factual background underlying Plaintiffs' FOIA request in the February 27 Order.  (*See* February 27 Order 2–6).  Because that factual background remains the same, it is incorporated here.

### A.    Procedural Background

The Government first moved for summary judgment on December 30, 2016, seeking judgment on Counts II and III of the Complaint.  (*See generally* Motion for Summary Judgment ("First MSJ") [ECF No. 27]).  At that time, the Government had not fully processed Plaintiffs' first FOIA request (*see* February 27 Order [ECF No. 58] 5[5]), which was submitted by Plaintiffs to the FBI on April 8, 2015.  Plaintiffs' first request sought transcripts of the Meese Commission proceedings; an April 30, 2014 Memorandum for the Record; drafts of the final Commission report; several FBI briefings and summaries given to the Commission; and a case file reviewed by the Commission regarding a family that once lived in Sarasota, Florida ("First Request" or "Count I").  (*See* Defs.' SUF ¶¶ 1–2).

On February 27, 2017, the Court issued an Order granting in part and denying in part Defendants' First MSJ.  (*See generally* February 27 Order).  Five days before the Court issued its Order, the Government filed a Motion for Continuance ("Extension Motion") [ECF No. 52], requesting leave to move for summary judgment on Count I on the basis it was unable to do so in the First MSJ.  The Government explained it had just finished producing records responsive to Count I and wanted an opportunity to move for summary judgment, as "FOIA cases are generally and most appropriately resolved on motions for summary judgment."  (*Id.* 4 (citations omitted)).  At calendar call, on February 28, 2017 (*see* Minute Entry [ECF No. 59]), the Court granted in part Defendants' Extension Motion and allowed the Government to file a second

---

[5] For consistency, the Court uses the pagination generated by the electronic CM/ECF database, which appears in the header of all court filings.

motion for summary judgment to address Count I (*see* Order [ECF No. 60]).

The Government filed its Second MSJ on March 14, 2017 (*see generally* Second MSJ); however, more than two weeks later, on March 31, 2017, it filed a Motion for Leave [ECF No. 75], to file a third motion for summary judgment. In the Motion for Leave, the Government explained it had located an additional 302 pages of records responsive to Count I and sought to supplement its Second MSJ, stating a ruling on the pending motion would not fully resolve the case. (*See id.* 4–5). After considering the parties' submissions (*see generally id.*; Plaintiffs' Opposition [ECF No. 80]; Defendants' Reply [ECF No. 81]), the Court granted the Motion for Leave (*see* Order [ECF No. 82]), and the Government filed its Third MSJ on April 6, 2017.

### B. Second and Third MSJ Issues

In the Second and Third Motions, the Government requests summary judgment on Count I of the Complaint, corresponding to Plaintiffs' First Request. (*See generally* Second MSJ; Third MSJ). Defendants argue the Court should rule as a matter of law: (1) they have conducted a reasonable search to "locate all records responsive to Plaintiffs' FOIA request," and (2) the FBI "lawfully asserted FOIA exemptions to withhold certain information." (Second MSJ 35; Third MSJ 20). Plaintiffs dispute this, insisting: (1) "the FBI has not shown" it "conducted an adequate search for responsive records," and (2) disputed issues of material fact remain regarding exemptions asserted by the FBI to redact and withhold information. (Second Resp. 41; *see* Third Resp. 5, 23). There is also a third issue regarding whether the FBI must produce certain records in this case which are also before Judge William Zloch for review in *Broward Bulldog, Inc., et al. v. U.S. Department of Justice, et al.*, 12-CV-61735-WJZ (S.D. Fla. 2012) ("*Broward Bulldog I*"). The FBI asserts it does not have to reproduce these records (*see* Second Reply 2–4), while Plaintiffs maintain the FBI must provide them (*see* Second Resp. 9–14).

## II.  LEGAL STANDARDS

### A.    The FOIA and Summary Judgment Generally

"The purpose of FOIA is to encourage public disclosure of information so citizens may understand what their government is doing." *Office of Capital Collateral Counsel, N. Region of Fla.* ex rel. *Mordenti v. U.S. Dep't of Justice*, 331 F.3d 799, 802 (11th Cir. 2003).  "Congress enacted FOIA to 'enable the public to have access to government information that is unnecessarily shielded from public view.'" *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1244 (11th Cir. 2008) (quoting *Nadler v. U.S. Dep't of Justice*, 955 F.2d 1479, 1484 (11th Cir.1992)).  Accordingly, "the records at issue . . . are presumed to be subject to disclosure unless" Defendants "affirmatively establish[] . . . the requested records fall into one of FOIA's exemptions." *Office of Capital Collateral Counsel*, 331 F.3d at 802 (alterations added; citation omitted); *see also Light v. U.S. Dep't of Justice*, 968 F. Supp. 2d 11, 26 (D.D.C. 2013) ("It is clear that 'disclosure, not secrecy, is the dominant objective of the [FOIA].'" (alteration added; citation omitted)).

The FOIA "vests jurisdiction in federal district courts to enjoin an 'agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)).  Courts review an agency's decision to withhold its records *de novo*, and the Government bears the burden of justifying any disputed exemptions.  *See id.*; *see also Miccosukee Tribe of Indians of Fla.*, 516 F.3d at 1258.  In assessing the evidence, courts must determine whether the agency had an "adequate factual basis" for invoking the exemptions.  *Miccosukee Tribe of Indians of Fla.*, 516 F.3d at 1244. "[I]n this Circuit, an adequate factual basis may be established, depending on the circumstances

of the case, through affidavits, a *Vaughn* Index,[6] *in camera* review, *or* through a combination of these methods." *Id.* at 1258 (alteration and footnote call number added; emphasis in original; citation omitted).

FOIA cases are generally resolved on motions for summary judgment. *Id.* The court may only enter summary judgment if the pleadings, discovery and disclosure materials on file, and any affidavits show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The relevant question on summary judgment, viewed in the light most favorable to the person making the FOIA request, is whether an agency conducted a reasonable and adequate search 'calculated to uncover all relevant documents' and whether any withholdings were justified." *Guidry v. Comey*, No. 4:15CV23-RH/CAS, 2016 WL 1068611, at *3 (N.D. Fla. Feb. 4, 2016), *report and recommendation adopted*, No. 4:15CV23-RH/CAS, 2016 WL 1069669 (N.D. Fla. Mar. 17, 2016) (citations omitted). Where "the moving party fails to demonstrate the absence of a genuine issue of material fact, the motion should be denied." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (citations omitted).

**B.    FOIA Exemptions 1, 3, 5, 6, 7(C)–(E)**

The Government may invoke nine statutory exemptions to withhold records from public disclosure. *See* 5 U.S.C. §§ 552(b)(1)–(9); *see also Chilivis v. S.E.C.*, 673 F.2d 1205, 1210–11

---

[6] A *Vaughn* index lists the documents the agency is withholding along with a detailed justification for the agency's claim. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

(11th Cir. 1982) ("[R]ecords and documents held by federal agencies are presumed subject to disclosure unless the agency can establish that the material falls into one of the FOIA's nine exemptions." (alteration added; citations omitted)).  These exemptions attempt to "balance the public's need for access to information with the Government's need, under some circumstances, for confidentiality."  *Chilivis*, 673 F.2d at 1210 (citation omitted).  Because of the FOIA's presumption in favor of public disclosure, these "exemptions are . . . narrowly construed."  *F.B.I. v. Abramson*, 456 U.S. 615, 630 (1982) (alteration added; citation omitted).

Below is a summary of the seven statutory exemptions the Government invokes in its Motions to withhold and redact information.

1.      Exemption 1 – Classified Information

Exemption 1 protects classified information from disclosure; it exempts documents "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . [documents that] are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1) (alterations added).  Because of the possible strong implications for national security, courts should defer to an agency's decision to withhold information under Exemption 1.  *See Halperin v. Cent. Intelligence Agency*, 629 F.2d 144, 147–48 (D.C. Cir. 1980); *see also Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (stating courts are required to "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record" (internal quotation marks and citation omitted)).

While the burden of proof is on the Government, "a reviewing court 'must recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosures of a

particular classified record.'" *Krikorian v. U.S. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993) (alteration in original) (quoting *Military Audit Project*, 656 F.2d at 738). "Judges, moreover, lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." *Id.* (quoting *Halperin*, 629 F.2d at 148). However, the Government must present "reasonable specificity of detail rather than merely conclusory statements" to be entitled to summary judgment in its favor under Exemption 1. *Halperin*, 629 F.2d at 148. If the Government provides a detailed explanation, "the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions; to do so would violate the principle of affording substantial weight to the expert opinion of the agency." *Id.*

2.    Exemption 3 – Information Exempted from Disclosure by Statute

Exemption 3 protects from disclosure documents that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). It "allows for legislative override of [the] FOIA's presumption of disclosure." *Castagna v. Sec'y of Health & Human Servs.*, No. 99-411V, 2011 WL 4348135, at *16 (Fed. Cl. Aug. 25, 2011) (alteration added). As with Exemption 1, courts should defer to an agency's decision to withhold information under Exemption 3. *See Halperin*, 629 F.2d at 147–48. Under Exemption 3, the Government need only show a statute falls under Exemption 3 and that the withheld material falls within the statute. *See Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). This exemption is different from other FOIA exemptions because "its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 350 (D.C. Cir. 1978).

3.  Exemption 5 – Privileged Documents

Exemption 5 allows the Government to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "This means, in effect, privileged documents that originated with the agency." *Touarsi v. U.S. Dep't of Justice*, 78 F. Supp. 3d 332, 344 (D.D.C. 2015) (citation omitted).

One of the recognized privileges is the "deliberative process" privilege, which encompasses documents "reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004) (citation omitted); *see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). "The purpose of this privilege is to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Moye, O'Brien, O'Rourke, Hogan & Pickert*, 376 F.3d at 1277 (citing *Klamath Water Users*, 532 U.S. at 8–9).

"To fall within the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'" *Id.* (citation omitted). A document is predecisional if it was "prepared in order to assist an agency decision-maker in arriving at his decision and may include recommendations, draft documents . . . and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (alteration added; citations omitted). "A document is 'deliberative' if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the

8

agency and, thereby, undermine the agency's ability to perform its functions." *Id.* at 1278 (citations omitted).

In *Environmental Protection Agency v. Mink*,[7] the Supreme Court "distinguished between deliberative and factual materials: 'Exemption 5 . . . requires different treatment for material reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other.'" *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1227 (10th Cir. 2007) (quoting *Mink*, 410 U.S. at 73). It held "memoranda consisting only of compiled factual material" were not protected unless the factual material was intertwined with deliberative process material. *Mink*, 410 U.S. at 89.

In the Eleventh Circuit, "[t]he only inquiry that should be made in deciding whether something should be denoted opinion, and hence deliberative, is: Does the information reflect the give-and-take of the consult[at]ive process?" *Fla. House of Reps. v. U.S. Dep't of Commerce*, 961 F.2d 941, 949 (11th Cir. 1992) (alterations added). "The underlying purpose of the deliberative process privilege is to ensure that agencies are not forced to operate in a fish bowl. . . . Therefore, courts must focus on the effect of the material's release." *Moye, O'Brien, O'Rourke, Hogan, & Pickert*, 376 F.3d at 1278 (internal citations omitted; alteration added).

4.    <u>Exemption 6 – Exemption of Personnel and Medical Files</u>

Exemption 6 allows the Government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In *Department of Air Force v. Rose*, 425 U.S. 352 (1976), the Supreme Court held Exemption 6 does not "create[] a blanket exemption for personnel files," *id.* at 371 (alteration added), and "does not protect against disclosure every incidental invasion of privacy[,] [but] only such disclosures as constitute 'clearly unwarranted' invasions of personal

---

[7] 410 U.S. 73 (1973) (superseded by statute on other grounds).

privacy," *id.* at 382 (alterations added). The "primary purpose" of Exemption 6 is to "protect individuals from the *injury and embarrassment* that can result from the *unnecessary* disclosure of *personal* information." *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1196 (11th Cir. 2007) (emphasis in original; internal quotation marks omitted) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982)).

In *Rose*, the Supreme Court explained Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the [FOIA] to open agency action to the light of public scrutiny." 425 U.S. at 372 (alteration added; internal quotation marks omitted). The Eleventh Circuit has stated "the crux of Exemption 6 is its second prong, which asks whether disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" *News-Press*, 489 F.3d at 1197 (citations omitted). The Eleventh Circuit has also described "an agency's burden under Exemption 6" as "onerous." *Id.* at 1198 (alteration added) (citing *Stern v. F.B.I.*, 737 F.2d 84, 91 (D.C. Cir. 1984) (Exemption 6's language "require[s] a balance tilted emphatically in favor of disclosure" (alteration added)) (other citations omitted).

     5.    <u>Exemptions 7(C)–(E)</u>

     *a.  Exemption 7(C) – Protection of Personal Privacy*

Exemption 7(C) covers records compiled for law enforcement purposes and allows the Government to withhold information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) is similar to Exemption 6 but less onerous, *see News-Press*, 489 F.3d at 1198, because the agency need only show disclosure "could reasonably be expected" to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). Under Exemption 6, the Government must show

disclosure "would" constitute an unwarranted invasion of personal privacy. *Id.* § 552(b)(6); *see also U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994) ("Exemption 7(C) is more protective of privacy than Exemption 6 . . . . Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." (alteration added)).

### b. *Exemption 7(D) – Confidential Source Information*

Exemption 7(D) permits withholding of information that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). It "has long been recognized as the strongest of all of [the] FOIA's law enforcement exemptions." *Bullock v. F.B.I.*, 587 F. Supp. 2d 250, 253 (D.D.C. 2008) (alteration added; citation omitted). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. F.B.I.*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks and citations omitted). The inquiry focuses on whether "the particular *source* spoke with an understanding that the communication would remain confidential." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (emphasis in original).

In *Landano*, the Supreme Court held "the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation." *Id.* at 181. Instead, circumstances such as the nature of the crime and the source's relation to the crime must be considered in determining whether the source spoke with the understanding the information would remain confidential. *See id.*

### c. *Exemption 7(E) – Law Enforcement Techniques and Procedures*

Exemption 7(E) applies to information that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E) (alteration added). "A highly specific burden of showing how the law will be circumvented is not required; instead, exemption 7(E) only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Touarsi*, 78 F. Supp. 3d at 348 (alterations, internal quotation marks, and citations omitted). "While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well-known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness." *Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 78 (D.D.C. 2012) (citations omitted).

## III. ANALYSIS

### A. Introduction

At issue in the Second and Third Motion are: (1) the adequacy of the Government's search for responsive records; (2) whether the FBI must reproduce records already provided in *Broward Bulldog I*; and (3) the adequacy of various statutory exemptions claimed by the Government in withholding information. The Government asserts it conducted an adequate search for records, properly withheld documents duplicative of records produced in *Broward Bulldog I*, and correctly withheld information under numerous exemptions. (*See generally* Second MSJ; Third MSJ). Plaintiffs argue genuine issues of material fact remain regarding the adequacy of the FBI's search and the claimed exemptions, and contend the FBI must produce records in this case already furnished in *Broward Bulldog I*. (*See generally* Second Resp.; Third

Resp.). Defendants submitted the disputed documents, unredacted, for *in camera* review,[8] along with a *Vaughn* index (*see* Unclassified Summary *Vaughn* Index ("*Vaughn* Index") [ECF No. 76-1–76-18]); as well as three declarations[9] from David M. Hardy[10] explaining the applicability of the invoked exemptions (*see generally* Second Hardy Decl.; Fourth Hardy Decl.; Fifth Hardy Decl.).

The Court will first address the adequacy of the FBI's search for responsive records, and then consider whether the FBI must produce the records already produced in *Broward Bulldog I*. Finally, and most exhaustively, the Court examines the redacted and withheld disputed documents one by one, redaction by redaction, to determine whether the Government has met its burden of "affirmatively establish[ing] . . . the requested records fall into one of [the] FOIA's exemptions." *Office of Capital Collateral Counsel*, 331 F.3d at 802 (alterations added) (citing *Chilivis*, 673 F.2d at 1210–11).

### B.    Adequacy and Reasonableness of the FBI's Search

The FBI asserts it conducted an adequate and extensive search, processing 1,416 pages of responsive records. (*See* Third MSJ 4–5). It assures Plaintiffs' concerns regarding any possible deficiencies in the search and production of records have been addressed. (*See id.* 7). For their part, Plaintiffs vehemently dispute the adequacy of the search, accusing the Government of submitting declarations that "contain blatantly misleading statements and raise numerous factual

---

[8] The unredacted information marked as classified was separately submitted to the Clerk of Court. (*See* Defendants' Notice of *Ex Parte* Submissions [ECF No. 69]).

[9] (*See* Second Declaration of David M. Hardy ("Second Hardy Declaration") [ECF No. 27-1]; Fourth Declaration of David M. Hardy ("Fourth Hardy Declaration") [ECF No. 66-1]; Fifth Declaration of David M. Hardy ("Fifth Hardy Declaration") [ECF No. 83-1]).

[10] Hardy is the Section Chief of the Record-Information Dissemination Section of the FBI's Records Management Division. (*See* Second Hardy Declaration ¶ 1).

issues." (Second Resp. 17). According to Plaintiffs, there are "red flag[s]" suggesting the FBI "intentionally concealed responsive records," thereby "creating serious questions regarding the completeness of the production." (*Id.* 19–20, 22 (alterations added)). Because the law only requires the FBI's search be reasonable, not exhaustive, the Court finds the Government — through detailed declarations — has met its burden of showing the search was adequate and reasonable.

"Under [the] FOIA, an adequate search is one that is 'reasonably calculated to uncover all relevant documents.'" *Davidson v. U.S. Dep't of State*, 206 F. Supp. 3d 178, 190 (D.D.C. 2016) (alteration added) (quoting *Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007)). The agency does not "need to show that its search was exhaustive," *DelVecchio v. I.R.S.*, 360 F. App'x 104, 108 (11th Cir. 2010) (internal quotation marks and citation omitted), but it "must conduct a good faith, reasonable search of those systems of records likely to possess the requested" documents, *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citation omitted); *see also Pavlenko v. I.R.S.*, 356 F. App'x 293, 294 (11th Cir. 2009).

"When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a 'reasonably detailed' affidavit describing the scope of that search." *Davidson*, 206 F. Supp. 3d at 190 (citations omitted). "It is not enough . . . for the affidavit to state in conclusory fashion that the agency conducted a review of [the files] which would contain information that [the plaintiff] requested and did not find anything responsive to the request." *Id.* (first alteration added; second and third alterations in original; internal quotation marks and citation omitted). The affidavit must be "reasonably detailed and not controverted by contrary evidence or evidence of bad faith." *Marino*, 993 F. Supp. 2d at 9 (citation omitted). "Once an agency has made a *prima facie* showing of adequacy, the burden shifts to the plaintiff to provide

countervailing evidence as to the adequacy of the agency's search," *Schoenman v. F.B.I.*, 764 F. Supp. 2d 40, 46 (D.D.C. 2011) (internal quotation marks and citation omitted), and "demonstrate the lack of a good faith search," *Marino*, 993 F. Supp. 2d at 9 (citation omitted).

Hardy's declarations describe how the FBI conducted its search.[11] (*See generally* Hardy Fourth Decl.; Hardy Fifth Decl.). Upon receipt of Plaintiffs' FOIA request, the FBI directed its search for records to the FBI Director's Office, where two employees directly involved with the Meese Commission's work conducted the search. (*See* Hardy Fifth Decl. ¶ 8). The two employees identified an electronic storage site where documents related to the Meese Commission were stored, and because the FBI "believed this electronic storage contained all the [Meese] Commission records [P]laintiffs were seeking," it did not look elsewhere. (*Id.* (alterations added)). It then conducted "a document-by-document search of all records" on the electronic storage site and "located 896 pages" of responsive records. (*Id.* ¶ 9). At that time, the FBI did not believe responsive records existed in any other location and did not conduct additional searches. (*See id.*).

After the FBI produced its first batch of documents, Plaintiffs questioned whether the search had been adequate, identifying a list of missing records. (*See id.* ¶ 10). The FBI maintains even though it believed its original search efforts were reasonable, it attempted to address Plaintiffs' concerns by contacting the two employees who conducted the original search. (*See id.*). "[A]dditional inquiries" were made and "for the first time" the FBI learned of "the existence of" another electronic case file and "additional records they believed" had been

---

[11] The declarations "may be submitted by an individual who either participated in the search or coordinated the search." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015). Hardy manages the FBI's FOIA requests and is "aware of the FBI's handling of [P]laintiffs' FOIA requests." (Fifth Hardy Decl. ¶¶ 2–3 (alteration added)).

"destroyed." (*Id.* (alteration added)). Some of the additional documents were located in Washington, DC and were scheduled to be destroyed after having been held for a year. (*See id.*). Upon learning the documents still existed, the FBI requested the responsive documents be produced to Plaintiffs. (*See id.* ¶¶ 11–12). Plaintiffs were notified of these additional documents on March 24, 2017. (*See id.* ¶ 12).

Hardy's declarations regarding the FBI's search for records is reasonably detailed, describing the steps the FBI took to locate responsive records. (*See, e.g.*, Hardy Fifth Decl.). Because the declarations are detailed, the burden shifts to Plaintiffs to "demonstrate the lack of a good faith search," *Marino*, 993 F. Supp. 2d at 9 (citations omitted), and "produce 'countervailing evidence' suggesting a genuine dispute of material fact exists as to the adequacy of the search," *Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, No. 15- CV-1203-RC, 2017 WL 1207410, at *8 (D.D.C. Mar. 31, 2017) (citation omitted).

Plaintiffs state Hardy's "declarations" contain "blatantly misleading statements and raise numerous factual issues." (Second Resp. 17). In support, they note the FBI incorrectly anticipated producing documents in December 2016 but was unable to meet this deadline. (*See id.* 17). Plaintiffs further question why the FBI initially chose not to search the central records system and instead relied on the Director's Office to respond to the requests. (*See id.* 17–18). They assert the FBI's decision to maintain the Meese Commission records out of the FBI's central records system raises a "red flag" (*id.* 18), and contend the FBI's identification of new records in March 2017 suggests the "FBI Director" "intentionally concealed responsive records" (*id.* 20). Plaintiffs argue there is substantial evidence of bad faith on the FBI's part and the searches were inadequate because the agency did not immediately produce the responsive

documents and instead produced them late in in several rounds.[12] They claim "[m]any records still appear to be missing," and they believe the FBI is intentionally withholding the production of documents "to punish the Bulldog for shining a light on the FBI's work . . . or to interfere with its investigation, or both." (*Id.* 22 (alterations added)).

Defendants contend any "delays in processing a FOIA request do not amount to a showing of agency bad faith." (Second Reply 6 (citing *Calvert v. United States*, 715 F. Supp. 2d 44, 47 (D.D.C. 2010)). And they insist, "Plaintiffs completely ignore the FBI's explanation that its initial delay in processing Plaintiffs' requests was due to an overwhelming large backlog of pending FOIA requests and litigation." (*Id.*).

Under prevailing law, the Government has met its burden of showing its search was adequate. Plaintiffs have failed to meet their burden of showing bad faith by the FBI in performing the searches and do not identify other locations and documents the FBI should search and locate. Hardy's declarations are sufficiently detailed and non-conclusory, describing every step the FBI took to identify responsive records. The declarations "are accorded 'a presumption of good faith,' which can only be rebutted with clear evidence of bad faith, and not by 'purely speculative claims about the existence and discoverability of other documents.'" *Bigwood*, 132 F. Supp. 3d at 136 (citation omitted). Plaintiffs' conclusory statements the FBI has acted in bad faith "to punish" (Second Resp. 22), are insufficient.

Furthermore, the Court is unpersuaded by Plaintiffs' claim the FBI's tardiness in producing the documents and multiple rounds of production show the search is inadequate. The

---

[12] Plaintiffs' discussion of the adequacy of the FBI's search also addresses exemptions claimed by the FBI in previous Hardy declarations in an attempt to show Hardy has made contradictory statements and "confessed" his previous declaration "was wrong." (Second Resp. 18). Plaintiffs also reference a Central District of California case where the court sanctioned Hardy for misleading the court — the Ninth Circuit later vacated the sanctions. (*See id.* 15–16). These discussions are not relevant to the analysis whether the FBI's search was adequate.

FBI's willingness to address Plaintiffs' concerns regarding the first two productions, by conducting another search for records, "substantially undercut[s] any suggestion of bad faith." *Bigwood*, 132 F. Supp. 3d at 140 (alteration added). With respect to the late production, *Miccosukee Tribe of Indians of Florida* is instructive. *See* 516 F.3d at 1257. There, the Eleventh Circuit stated courts should not draw a negative inference from an agency's late production of documents. *See id.* Courts should instead evaluate whether the agency provided a reasonable explanation for the late production, and the Eleventh Circuit ultimately found the "district court did not err when it failed to draw any adverse interest against the [agency] due to its late disclosure of the documents in question." *Id.* (alteration added).

Here, the FBI's explanation for its late production and for conducting a third search upon Plaintiffs' request, is sufficient to show the agency acted in good faith. *See Bory v. U.S. R.R. Ret. Bd.*, 933 F. Supp. 2d 1353, 1359 (M.D. Fla. 2013) ("Continuing discovery and release of documents may not prove that the original search was inadequate, but rather may show good faith on the part of the agency that it continues to search for responsive documents." (citation omitted)).

Last, Plaintiffs' assertion "[m]any records still appear to be missing," without specifying which records are missing or where the FBI should search to find them, does not create a triable issue. (Second Resp. 22 (alteration added)). "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (alteration added; citation omitted). The law does not require an "exhaustive or meticulous account of the agency's search, but merely a reasonably detailed one. . . . Perfection is not now, and never has been, the relevant standard." *Schoenman*, 764 F. Supp. 2d at 50 (alteration added; internal citation

omitted). The FBI has produced detailed declarations regarding the searches it conducted, and Plaintiffs have "adduced no countervailing evidence that would raise a 'substantial doubt' as to the adequacy of the [FBI's] search" (*id.* (alteration added)); thus, summary judgment in the Government's favor on this issue is appropriate.

### C. Disputed Documents

The second question on summary judgment is whether the Government has properly withheld documents in their entirety and whether the statutory exemptions asserted to withhold or redact information from responsive records are justified. The Court analyzes each of the 28 disputed documents.

### 1. Document 1 – The Sarasota Family Case File

Plaintiffs argue the FBI must reproduce documents of the Sarasota family case file already furnished in *Broward Bulldog I*. (*See* Second Resp. 9–14). The FBI explains it released records from the "Sarasota family case file" in *Broward Bulldog I* and thus did not "re-release" them in this case because they are duplicates. (Second Reply 2). It furthers states any non-duplicative records of the Sarasota family case file "were produced to Plaintiffs in *this* action." (*Id.* 4 (emphasis in original)).

According to Plaintiffs, the FBI has not "offered . . . [a] declaration or other evidentiary support" to confirm some of the records requested are duplicative of the records before Judge Zloch. (Second Resp. 10 (alterations added)). Plaintiffs further state Judge Zloch has made no determination regarding the records and thus the undersigned should consider them. (*See id.* 13). They also assert they are "entitled to see the records" regardless of whether they are the same "records produced in the prior lawsuit," and producing the records would not burden the FBI. (*Id.*).

The Court will not consider the records produced in *Broward Bulldog I*. To do so could potentially result in inconsistent findings in the two actions with respect to the duplicate records. Hardy's declaration states the FBI released "eleven pages" of records regarding the Sarasota family case file that were not duplicative. (Fifth Hardy Decl. ¶ 21). Because the Court must accord the agency's detailed declaration "a presumption of good faith," *Bigwood*, 132 F. Supp. 3d at 136 (citation and internal quotation marks omitted), Plaintiffs' speculative claim the records were not produced in *Broward Bulldog I* is unpersuasive. The Court will not consider any documents at issue in *Broward Bulldog I*; the FBI is not required to produce those duplicative documents in this case.

2. Document 2 – April 30, 2014 Report (Broward Bulldog 1–4)[13]

The Court already considered this document in the February 27 Order, denying and granting in part summary judgment for the Government on the claimed exemptions. (*See* February 27 Order 10–23). After the Court issued its Order, the FBI removed some of the redactions but maintained the majority of the redactions. (*Compare* Exhibits to Second Hardy Declaration ("Second Hardy Declaration Exhibits"), Ex. K [ECF No. 27-2] 37–40; *with* Exhibits to Fourth Hardy Declaration ("Fourth Hardy Declaration Exhibits"), Ex. G [ECF No. 68-1] 22–25). The FBI now moves for summary judgment again, providing further explanations for the redactions it maintains are properly withheld under Exemptions 6 and 7(C). (*See* Second MSJ 13; Fourth Hardy Decl. Exs., Ex. G, 22–25). To avoid repetition, the Court incorporates its analysis of this document and the claimed exemptions from its February 27 Order here (*See* February 27 Order 10–23), and only addresses the new arguments raised by the Government.

---

[13] All of the requested records' pages were Bates stamped by the FBI on the bottom left corner with "Broward Bulldog [#]." (*See generally Vaughn* Index (alteration added)). For each document discussed, the Court identifies the Bates stamp number.

After reviewing the Government's explanations for the redactions, the Court's decision in the February 27 Order remains the same. Most of the names redacted under Exemptions 6 and 7(C) already appear in the public domain and are listed in Judge Zloch's Order to Compel. (*See* February 27 Order 10–15). Despite the February 27 Order clearly explaining why summary judgment would not be granted, the Government continues to baselessly assert these individuals' privacy interests outweigh the public interest. Plaintiffs correctly point out the Government's position is inconsistent because the Government maintains these redactions despite revealing the third parties' and FBI agents' names elsewhere. (*See* Second Resp., Ex. 1 [ECF No. 73-1] 5).

For the reasons stated in the February 27 Order, summary judgment is denied. The majority of the names appear unredacted in the April 30, 2014 Report, Judge Zloch's Order to Compel, and in other public documents. Moreover, the FBI continues to apply Exemptions 6 and 7(C) inconsistently. The FBI explains this inconsistency is actually the result of its stringent adherence to the balancing test between public and private interest required under the exemptions. (*See* Fourth Hardy Decl. ¶ 41). It further states releasing the names in this context would confirm the FBI investigated the individuals and disclosure could seriously disrupt their lives. (*See id.* ¶ 40). As to the FBI agent, the Government argues even if the name is in the public domain, it was not disclosed "officially by the FBI." (*See* Fourth Hardy Decl. Exs., Ex. G, 24).

These new explanations are insufficient to satisfy the FBI's burden at summary judgment. The information is already in the public domain, and the FBI has released some of the names in this same report. Moreover, there is a significant public interest in the information, and the Supreme Court has instructed courts to construe FOIA exemptions narrowly because the FOIA's objective is "disclosure, not secrecy." *Rose*, 425 U.S. at 361.

3. Document 3 – October 24, 2014 Report (Broward Bulldog 5–6)

The Court also considered this report in its February 27 Order, denying and granting in part summary judgment on the claimed exemptions. (*See* February 27 Order 23–29). The FBI's new justifications for the redactions are unpersuasive.

The first disputed redactions are the names of two FBI agents who prepared the report. (*See* Fourth Hardy Decl. Exs., Ex. G, 26). The two agents' names are redacted, while the name of the third agent who prepared the report, Jackie Maguire, is unredacted. (*See id.*). The FBI argues it "has not publically disclosed these FBI employees' names in conjunction with this . . . investigation," and disclosure "could make them targets for reprisal by investigative subjects." (*Id.* (alteration added)). The Government further contends releasing the names "would do little to nothing to advance public understanding of government operations." (Fourth Hardy Decl. ¶ 43). According to Plaintiff, "there is a significant public interest in understanding who briefed the Meese Commission," and the "Meese Commission report does not redact the names of the FBI agents or 33 other current and former federal government employees." (Second Resp. 28). The Court's decision regarding these two redactions in the February 27 Order remains unchanged: "[t]he FBI's posture these two agents' personal privacy warrants protection, while the third agent's does not, is unsupported." (February 27 Order 24 (alteration added)).

The second disputed redaction is the name of an individual investigated by the FBI for possible connections to the September 11 attacks. (*See* Fourth Hardy Decl. Exs., Ex. G, 26–27). The FBI argues release of the individual's name would "place suspicion of wrongdoing on" him, and the public interest "is rather limited" because the document would only reveal additional suspects. (*Id.*). The Government repeats the same arguments it made in its First MSJ and skirts the Court's concern (*see* February 27 Order 25–26), by failing to explain why the name should

remain undisclosed. Notably, the sentence immediately following the redacted material states: "None of this identifies new participants in the 9/11 attacks but hardens the existing known connections to the plot." (Fourth Hardy Decl. Exs., Ex. G, 27). Because the Government fails to address the Court's concerns and again does not meet its burden of showing Exemptions 6 and 7(C) are applicable, summary judgment is denied.

### 4. Document 4 – Youssef Interview Briefing (Broward Bulldog 7–8)

The Court granted summary judgment in the Government's favor on this document because "the redactions contain information of a confidential source and techniques used by the FBI to counter terrorism." (February 27 Order 30). Plaintiffs recognize "without the benefit of viewing the redacted materials, [they] cannot judge the applicability of the exemption[s]." (Second Resp. 29 (alterations added)). The Court has reviewed the redacted material and finds the exemptions justified. (*See* February 27 Order 29–30).

### 5. Document 5 – October 5, 2012 Memorandum (Broward Bulldog 9–12)

The Court considered this memorandum in the February 27 Order. (*See* February 27 Order 31–36). Summary judgment was granted in the Government's favor for all of the exemptions except for Exemptions 6 and 7(C). (*See id.*). To address the Court's concerns the Court could not determine how and why the exemptions applied — because some names were unredacted, while others were not (*see id.* 35–36) — the Government provides multiple explanations (*see* Fourth Hardy Decl. Exs., Ex. G, 30–33). According to the Government, the unredacted names were released because the individuals: (1) have previously been "acknowledged in the FBI's public report"; (2) were hijackers in the September 11 attacks; (3) were identified by the FBI in previous public reports as having connections to the attacks; or (4) are deceased. (*Id.*). Yet, according to the Government, the redacted names have not been publicly released by the FBI and releasing their names could "implicate these individual[s] in

illicit[] activities by revealing their ties to known and/or suspected terrorists and terrorist activities." (*Id.* 32 (alterations added)).  It also contends the individuals' privacy interests outweigh the public's interest in the information.  (*See id.*).

According to Plaintiffs, "the FBI simply asserts its conclusory, boilerplate privacy interest language . . . .  [and has] failed to explain the distinctions between redacted and unredacted names."  (Second Resp. 31 (alterations added; citations omitted)).  Although the FBI's present briefing does explain why the agency chose to redact some names while revealing others, the FBI still fails to meet its onerous burden under Exemptions 6 and 7(C).  *See News-Press*, 489 F.3d at 1198 (stating "an agency's burden under Exemption 6 of showing that disclosure would constitute a clearly unwarranted invasion of personal privacy is an onerous one" (internal quotation marks and citation omitted)).

Plaintiffs have identified the significant public interest in information about who may have been involved in the September 11 attacks.  They explain "families of 850 people killed in the 9/11 attacks and 1,500 people injured . . . filed a new complaint against the Kingdom of Saudi Arabia in New York" and believe there were Saudis living in the United States, such as the Al-Hijji family, who may have known or were involved in supporting the hijackers.  (Second Resp. 8 (alteration added)).  Given the significant public interest in learning about possible suspects involved in the attacks, the FBI has not met its burden of showing Exemptions 6 and 7(C) apply to the selectively redacted names.

### 6.  Document 6 – Duplicate of April 30, 2014 Report (Broward Bulldog 221–224)

The Government states this document is a duplicate of the April 30, 2014 Report.  (*See* Second MSJ 14).  Plaintiffs request the FBI produce the pages in the document, Bates stamped as Broward Bulldog 221 to 224, "to confirm that they are, in fact, copies."  (Second Resp. 31).  The Court has reviewed the document (*see Vaughn* Index [ECF No. 76-1] 2–5), and confirms it is

indeed a duplicate of the April 30, 2014 Report, Broward Bulldog 1–4 (*see* Fourth Hardy Decl. Exs., Ex. G, 22–25).

### 7. Document 7 – Alleged Sarasota Link to 9/11 Hijackers (Broward Bulldog 229–230)

This document summarizes the FBI's investigation of a family alleged to have connections to the September 11 attacks. (*See id.* Ex. H, 37; *Vaughn* Index [ECF No. 76-1] 6–7). The FBI invokes Exemptions 6, 7(C), and 7(D) for the redactions. Regarding the redactions made under Exemptions 6 and 7(C), the FBI explains it is protecting identifying information about individuals suspected to have connections to the September 11 attacks. (*See* Second Hardy Decl. ¶ 58). The FBI explains releasing the names "would cast them in an extremely negative light." (*Vaughn* Index [ECF No. 76-1] 6). Here, as in other instances where the Government invoked these exemptions, the Government has failed to meet its burden. First, many of the redacted names are already in the public domain — released by the FBI or media sources. Second, the FBI previously released this document to Plaintiffs with fewer redactions than it now claims are necessary. (*See* Second Resp. 32; *see also* Pls.' SUF Resp., Ex. 1 [ECF No. 72-1] 27–28).

It is unclear and contradictory why the FBI previously released some of the information but has now decided to redact under Exemptions 6 and 7(C) the information previously released. (*Compare Vaughn* Index [ECF No. 76-1] 6–7; *with* Pls.' SUF Resp., Ex. 1, 27–28). As noted, "[o]ne can have no privacy interest in information that is already in the public domain," *Citizens for Responsibility & Ethics in Wash. I*, 840 F. Supp. 2d at 233 (alteration added); particularly where, as here, the FBI itself placed the exact information in the public domain.

As to Exemption 7(D), the FBI claims it redacted "identifying information of individuals who provided information under implied assurances of confidentiality." (Second Hardy Decl. ¶

67).  The FBI previously released the exact information, in this same document, it now claims must be redacted under Exemption 7(D).  (*See Vaughn* Index [ECF No. 76-1] 6–7).  The Court cannot fathom why the FBI would redact and claim a statutory exemption for information it has already released and which Plaintiffs already possess.  (*See* Pls.' SUF Resp., Ex. 1, 27–28).  Summary judgment as to all the redactions in this document is denied.

8. <u>Document 8 – April 23, 2014 Report and Deleted Pages (Broward Bulldog 612–616)</u>

This document has numerous pages — some are completely withheld and others released with redactions.  (*See* Second Resp., Ex. 1 [ECF No. 73-1] 32–37).  The pages withheld in their entirety, Bates stamped Broward Bulldog 615–616, contain information of FBI investigative techniques that may risk circumvention of the law if released and discuss the FBI's decision making process and deliberations.  (*See Vaughn* Index [ECF No. 76-1] 8–9 [ECF No. 76-4] 5; *see also Ex Parte* . . . Documents [ECF No. 93-1] 7–8).  Thus, they are properly withheld under Exemptions 5 and 7(E).

Turning to the April 23, 2014 memorandum, the FBI relies on Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E).  (*See* Second Resp., Ex. 1 [ECF No. 73-1] 34–36).  Exemptions 1 and 3 protect classified information.  *See* 5 U.S.C. §§ 552(b)(1), (b)(3).  After reviewing the material redacted under Exemptions 1 and 3 (*see Vaughn* Index [ECF No. 76-4] 1–5), the Court finds the information involves classified material and is therefore properly exempt.

The FBI also properly invokes Exemption 5 to protect information regarding the FBI's deliberative process.  (*See id.*; *see also* 5 U.S.C. § 552(b)(5)).  The information redacted under Exemption 5 reveals FBI policies and recommendations, the release of which could "have an inhibiting effect upon agency policy development."  (Second Hardy Decl. ¶ 53).

Exemption 7(D) is also justified. A review of the redacted information *in camera* reveals an FBI confidential source (*see* Second Hardy Decl. ¶ 67 (Hardy states any redaction under category (b)(7)(D)-1[14] protects the names of parties who provided confidential information to the FBI), who provided information to the FBI. *See Lesar*, 636 F.2d at 492 (Under Exemption 7(D), if the Government establishes through affidavits that "the information at issue was furnished by a 'confidential source' during the course of a legitimate criminal law investigation," "all such information obtained from the confidential source receives protection." (footnote call numbers omitted)).

Moreover, the Government also properly invokes Exemption 7(E) to protect FBI investigative techniques and procedures. (*See* Second Hardy Decl. ¶ 76 (alteration added); *see also id.* ¶ 78 (noting the FBI is also protecting the methods it uses to collect and analyze information); *id.* ¶ 79 (stating the FBI redacted information regarding the types of evidence it gathers in national security investigations)); *see also Citizens for Responsibility & Ethics in Wash. II*, 746 F.3d at 1102 ("Exemption 7(E) sets a 'low bar for the agency to justify withholding,' *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), [but] the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed." (alteration added; emphasis in original)).

The last two exemptions are 6 and 7(C). These are used to redact the names of two FBI agents who briefed the Meese Commission. (*See* Second Resp., Ex. 1 [ECF No. 73-1] 34). As in other documents where the FBI selectively redacts some of the briefers' names while disclosing others (*see, e.g.*, Doc. 1, *supra*), the FBI has not met its burden in establishing Exemptions 6 and 7(C) apply.

---

[14] This is an FBI subcategory identified in the margins of the documents and the Second Hardy Declaration, and separate from the FOIA categories. (*See generally* Second Hardy Decl.; Second Hardy Decl. Exs.);

9. Document 9 – March 11, 2014 Memorandum (Broward Bulldog 657–658)

In this document, the FBI invokes Exemptions 3, 5, 6, 7(C), and 7(E). (*See* Second Resp., Ex. 1 [ECF No. 73-1] 39–40; *see also Vaughn* Index [ECF No. 76-2] 2–3). Here again, the FBI redacts two agents' names, while revealing the names of five others. (*See* Second Resp., Ex. 1 [ECF No. 73-1] 39; *see also Vaughn* Index [ECF No. 76-2] 2). This inconsistency in redacting two names, while disclosing five, is unexplained. (*See generally* Second MSJ; Second Hardy Decl.). Strangely, Exemption 3 is used simultaneously with Exemptions 6 and 7(C) to redact one of the FBI agents' names. (*See Vaughn* Index [ECF No. 76-2] 2). The FBI does not explain why this agent's name is exempt. (*See id.*; *see also* Fourth Hardy Decl. ¶ 56). It only states the information was redacted "per [the National Security Agency]." (*Vaughn* Index [ECF No. 76-2] 2 (alteration added)). Because the FBI has failed to properly explain why Exemptions 3, 6, and 7(C) apply to redact the two agents' names, summary judgment is denied for these redactions.

However, summary judgment is appropriate with respect to Exemptions 5 and 7(E) because the redacted information discusses sensitive FBI investigative techniques and procedures as well as internal deliberations, opinions, and analytics properly withheld from public disclosure. (*See Vaughn* Index [ECF No. 76-2] 2–3).

10. Document 10 – March 31, 2014 Memorandum (Broward Bulldog 672–674)

The FBI relies on Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E) to redact portions of this memorandum. (*See* Second Resp., Ex. 1 [ECF No. 73-1] 41–44; *see also Vaughn* Index [ECF No. 76-3] 3–7). For Exemptions 1 and 3, the Court must defer to the FBI's classification of the redacted information as classified, *see Casey*, 656 F.2d at 738, because of the possible strong implications for national security. After reviewing the redacted information *in camera*, the Court

finds the FBI has met its burden and properly redacted the classified material, release of which could cause "grave or serious damage to national security." (Second Hardy Decl. ¶ 36).

As to Exemptions 7(D) and 7(E), which protect from disclosure information relating to a confidential source and techniques of law enforcement, respectively, *see* 5 U.S.C. §§ 552(b)(7)(D)–(E), the FBI also satisfies its burden on summary judgment. Under Exemption 7(D), the FBI withheld information containing "identifying information of individuals who provided information under implied assurances of confidentiality." (*Vaughn* Index [ECF No. 76-3] 6 (citing Second Hardy Decl. ¶ 67)). And under Exemption 7(E), the FBI withheld information to "protect the location and identity of a[n] FBI unit." (*Id.* 5 (alteration added)).

The FBI also utilizes Exemptions 6 and 7(C) to withhold the names of FBI special agents and personnel, arguing release of their names would constitute an unwarranted invasion of privacy. (*See Vaughn* Index [ECF No. 76-3] 3). As in other documents where the FBI redacts some agents' names (*see generally*, *supra*), it does not meet its burden at summary judgment. The last redaction on this document invokes Exemption 5. The information is properly withheld because it discusses internal FBI deliberations.

11. Document 11 – Duplicate of April 23, 2014 Report (Broward Bulldog 692–696)

The FBI did not produce the pages Bates stamped Broward Bulldog 692–696 because they are duplicates of Broward Bulldog 612–616. (*See* Second Resp. 33). Plaintiffs request the FBI produce the document nonetheless "to ensure that it is identical to the produced report." (*Id.*). There is no need for the FBI to produce the document because the Court has reviewed it and confirms it is a duplicate of the April 23, 2014 report already produced to Plaintiffs. (*Compare Vaughn* Index [ECF No. 76-4] 1–5, *with* Second Resp., Ex. 1 [ECF No. 73-1] 34–37).

12.  Document 12 – Duplicate of April 30, 2014 Report (Broward Bulldog 702–705)

This document is also a duplicate.  The Court reviewed the document Bates stamped Broward Bulldog 702–705 (*see Vaughn* Index [ECF No. 76-4] 6–9), and finds it is an exact duplicate of the April 30, 2014 Report marked as Broward Bulldog 1–4 (*see* Fourth Hardy Decl. Exs., Ex. G, 22–25).  Accordingly, the FBI does not need to reproduce this document, as the Court has already considered the FBI's invoked exemptions.

13.  Document 13 – May 9, 2014 Memorandum (Broward Bulldog 706–709)

The FBI asserts Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E) to justify the redactions in this memorandum.  (*See Vaughn* Index [ECF No. 76-4] 10; [ECF No. 76-5] 1–5).  After reviewing the unredacted memorandum *in camera*, the Court finds all of the exemptions are justified, except for Exemptions 6 and 7(C).  These two exemptions are used to redact the name of one FBI agent who prepared the memorandum.  Because the other agents' names are not redacted, summary judgment is denied as to these two exemptions.

The FBI properly relies on Exemptions 1 and 3 to protect classified information. Plaintiffs argue the FBI correctly redacted some information under these two exemptions but assert because the information was gathered "over 15 years ago" it should no longer be protected.  (Second Resp. 34–35).  Plaintiffs do not cite a single case or statute standing for the proposition classified information loses protection after a given number of years.  (*See generally id.*).  Plaintiffs and the Court "lack the expertise necessary to second-guess" the FBI's opinion in national security FOIA cases.  *Halperin*, 629 F.2d at 148.

Under Exemption 7(E), the FBI redacts FBI investigative techniques and procedures used to conduct investigations, as well as types of investigations conducted by the FBI.  (*See Vaughn* Index [ECF No. 76-4] 10; [ECF No. 76-5] 1–5).  According to the FBI, disclosure of this information would inform targets of FBI techniques and may enable them to develop

30

countermeasures.  (*See generally Vaughn* Index [ECF No. 76-4] 10; [ECF No. 76-5] 1–5).

Plaintiffs, without reviewing the redacted information, assert "what evidence the FBI had is not

indicative of the technique or procedure used to obtain that evidence."  (Second Resp. 34).  It is

unclear what Plaintiffs are attempting to argue with this statement, but a review of the material

evidences it is properly redacted under Exemption 7(E).   As to Exemption 7(D), it is

simultaneously invoked with Exemption 7(E) as to Broward Bulldog 707.[15]  (*See Vaughn* Index

[ECF No. 76-5] 1).   Because the Court finds this information is properly withheld under

Exemption 7(E), it does not consider Exemption 7(D).

Exemption 5 is also properly invoked to withhold internal agency deliberations and

recommendations.  (*See id.* 3).  Plaintiffs complain the FBI's explanation for the redaction is

vague and does not pinpoint a specific policy or decision.  (*See* Second Resp. 35–36).  While the

FBI acknowledges a final decision was not made regarding the redacted comments, the internal

deliberation process would be harmed if the information is released.   FBI personnel would be

"more guarded in their suggestions" if they knew their discussions and deliberations may one

day be disclosed.  (*Vaughn* Index [ECF No. 76-5] 3 (citing Second Hardy Decl. ¶ 53)).  "The

purpose of this privilege is to allow agencies to freely explore possibilities, engage in internal

debates, or play devil's advocate without fear of public scrutiny."  *Moye, O'Brien, O'Rourke,*

*Hogan & Pickert*, 376 F.3d at 1277 (citing *Klamath Water Users*, 532 U.S. at 8–9).  Because the

FBI explains the applicability of Exemption 5, and a review of the material shows it properly

falls under the exemption, summary judgment is appropriate.

---

[15] Exemption 7(D) is also marked on Broward Bulldog 708.  (*See Vaughn* Index [ECF No. 76-5] 3).  The FBI explains it inadvertently coded this redaction under 7(D), when the information actually falls under Exemption 7(E).  (*See id.* n.4).

### 14. Document 14 – Duplicate of October 24, 2014 Report (Broward Bulldog 757–758)

The FBI did not produce Broward Bulldog 757–758 because it is a duplicate of the October 24, 2014 Report, Broward Bulldog 5–6. (*See Vaughn* Index [ECF No. 76-5] 6–7; Fourth Hardy Decl. Exs., Ex. G, 26–27). Plaintiffs argue even if the document is an exact replica of a document they already possess, the FBI cannot "impose self-limitations" on the documents it produces. (Second Resp. 36). The Court reviewed the document and it is indeed a duplicate of Broward Bulldog 5–6; the FBI need not reproduce it.

### 15. Document 15 – February 18, 2014 (Broward Bulldog 759–760)

Only two exemptions are invoked in this document to withhold information: 5 and 7(E). (*See Vaughn* Index [ECF No. 76-5] 8, [ECF No. 76-6] 1; Second Resp., Ex. 1 [ECF No. 73-2] 14–15). The FBI explains it is protecting its internal deliberations process under Exemption 5 because even though a final decision has not been made regarding the discussions, release of the information would "impede candid discussions" within the agency. (*Vaughn* Index [ECF No. 76-6] 1 (citing Second Hardy Decl. ¶ 53)). Further, under Exemption 7(E), the FBI is protecting "sensitive investigative techniques and procedures used by the FBI to conduct counterterrorism investigations." (*Vaughn* Index [ECF No. 76-5] 8 (citing Second Hardy Decl. ¶ 76)). Plaintiffs dispute the exemptions are applicable and contend the FBI's justifications for the redactions are generic and vague. After reviewing the redacted material in conjunction with the Second Hardy Declaration, the Court finds the exemptions are justified because the redacted information encompasses FBI deliberations and investigative procedures. Additionally, Broward Bulldog 760 (*see Vaughn* Index [ECF No. 76-6] 1), falls entirely under Exemption 5 because it contains FBI internal deliberations and recommendations.

16.  Document 16 – Meese Commission Meeting Briefing (Broward Bulldog 859–
861)

The FBI redacted information in Broward Bulldog 859 under Exemptions 5, 6, and 7(C), and withheld Broward Bulldog 860–861 entirely under Exemption 5.[16]  (*See id.* 2–5).  The information redacted under Exemption 5 involves internal opinions, evaluations, and recommendations regarding an FBI program.  (*See generally id.*).  Plaintiffs protest they do not have a "meaningful opportunity to contest the FBI's redactions" because there is no date or topic provided regarding the document.  (Second Resp. 38).  However, the FBI cannot release the redacted information because it involves internal deliberations processes exempted from disclosure.

As to the first redaction under Exemptions 6 and 7(C), containing the name of an FBI Special Agent, summary judgment is denied.  The Court has already explained in its analysis of other documents, where the FBI redacts some agents' names, that there are many inconsistencies regarding the names the FBI chooses to redact.  The FBI also invokes Exemptions 6 and 7(c) in conjunction with Exemption 5 in Broward Bulldog 859; the Court finds the information falls under Exemption 5 entirely.

17.  Document 17 – September 8, 2014 (Broward Bulldog 1015–1017)

The FBI withheld Broward Bulldog 1016 and 1017 in full under Exemptions 1, 3, 5, 7(D), and 7(E).  (*Vaughn* Index [ECF No. 76-6] 6–8).  The majority of the information in this document has been classified either by the National Security Act of 1947, 50 U.S.C. section 3024(i)(1), or the Department of State.  (*See id.*; *see also* Fourth Hardy Decl. ¶¶ 46–56; Second Hardy Decl. ¶¶ 33–36).  There is also information regarding FBI deliberations and evaluations,

---

[16] Broward Bulldog 860 also invokes Exemption 7(E).  The Court finds the entire page is properly exempt under Exemption 5.

properly exempted from disclosure under Exemption 5.  (*See Vaughn* Index [ECF No. 76-6] 6–8).  Additionally, there are sensitive investigative techniques and information provided by a foreign government under an express assurance of confidentiality, properly withheld under Exemptions 7(E) and 7(D), respectively.  (*See id.*).

Plaintiffs take issue with the FBI's failure to "provide [them] any description of the redacted information" (Second Resp. 38 (alteration added)), but the Court has reviewed the information *in camera* and finds the Government has met its burden in justifying the exemptions.

As to Broward Bulldog 1015, a September 8, 2014 briefing regarding "Ottawa," the FBI asserts Exemptions 1, 3, 5, 6, 7(C), and 7(D) to redact portions of the page.  (*See* Second Resp., Ex. 1 [ECF No. 73-2] 20; Broward Bulldog 1015 [ECF No. 89-1] 1).  Exemptions 1, 3, 5, and 7(D) are justified because the redacted information is classified, discusses internal FBI deliberations, or involves information obtained from a foreign government agency under an express assurance of confidentiality.  However, summary judgment is denied as to Exemptions 6 and 7(C) because there is no basis for redacting one of the FBI attendees' names, while revealing the other; and there is also no basis for redacting part of the meeting's title.

18. Document 18 – New York Field Office Draft Briefing (Broward Bulldog 1263–1270)

This document was withheld in its entirety from Plaintiffs.  After reviewing it (*see Vaughn* Index [ECF No. 76-7] 1–8; [ECF No. 76-8] 1–3), along with Hardy's Second and Fourth Declarations, the Court finds the Government properly withheld the document because it is replete with information exempt from disclosure under Exemptions 1, 3, 5, and 7(D).  Although the Government has not met its burden with respect to Exemptions 6 and 7(C) — because it does not properly explain why the third parties' names deserve protection — the pages were redacted

in full under Exemptions 1, 3, 5, and 7(D), and thus summary judgment for the Government is warranted for this document.

19. Document 19 – Briefing regarding 9/11 Conspirators (Broward Bulldog 1271–1279)

This FBI briefing discusses conspirators of the September 11 attacks and the lessons learned by the FBI from the attacks.  (*See* Second Resp., Ex. 1 [ECF No. 73-2] 24–25; *see also Vaughn* Index [ECF No. 76-8] 4–7; [ECF No. 76-9] 1–8; [ECF No. 76-10] 1).  Plaintiffs want this document because they "believe[] . . . either the FBI did, in fact, consider the al-Hijji[]s to be co-conspirators and has covered up this connection, or failed in performing its duty to actively pursue credible leads and has failed the victims of 9/11."  (Second Resp. 39 (alterations added)).

The Court has read the document carefully and finds the FBI appropriately withheld the majority of the document under Exemptions 1, 3, 5, and 7(E).  Some portions of the document are exempt from disclosure under Exemptions 1 and 3 because the information is classified.  Additionally, much of the document discusses FBI investigative techniques and deliberations, opinions, or analytical comments, which are protected under Exemptions 7(E) and 5, respectively.  As to the portions redacted under Exemptions 6 and 7(C), summary judgment is denied.  The FBI fails to properly explain what information in particular falls under these two categories and why the individuals' names merit protection.  Further, the FBI does not explain whether the information redacted under Exemptions 6 and 7(C) simultaneously falls under any of the other statutory exemptions.

20. Document 20 – Intelligence Briefing regarding Counterterrorism (Broward Bulldog 1356–1379)

This document was withheld in full under Exemptions 1, 3, 5, 6, 7(C), and 7(E).  (*See Ex Parte* . . . Documents [ECF No. 93-1] 57–80).  It is a "[d]raft intelligence briefing regarding

counterterrorism." (Second Resp., Ex. 1 [ECF No. 73-2] 26–27 (alteration added)). The Court read the 24 pages and finds the briefing is properly withheld in full under Exemption 5 because it contains "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Moye, O'Brien, O'Rourke, Hogan & Pickert*, 376 F.3d at 1277. The document is is both predecisional and deliberative. *See id.* There are numerous FBI discussions regarding internal FBI policies and recommendations. Although other exemptions are applicable — for example, the document contains classified information — the document is properly withheld in full under Exemption 5 and thus the Government is entitled to summary judgment.

21. Document 21 – November 7, 2014 Memorandum (Broward Bulldog 1435–1439)

This memorandum discusses FBI policies, operational and strategic plans, as well as proposals to address concerns within the agency. (*See Ex Parte* . . . Documents [ECF No. 97-1] 1–5). The FBI fully withheld the pages Bates stamped Broward Bulldog 1436–1439 under Exemptions 5, 6, 7(C), and 7(E); and redacted portions of Broward Bulldog 1435 under Exemptions 5, 6, 7(C), and 7(E).

The Court has read the document and reviewed Hardy's Declarations for each of the asserted exemptions, and finds the Government met its burden with respect to all of the redactions except Exemptions 6 and 7(C). The last four pages of the document are properly withheld in full under Exemption 5 because they contain FBI preliminary opinions, evaluations, and analytical comments, the release of which could impede candid discussions within the agency in its decision-making and policy formation process. (*See* Second Hardy Decl. ¶ 53). As to the first page, Broward Bulldog 1435, the last three redactions are justified under Exemptions 5 and 7(E) because the information involves internal FBI deliberations and sensitive

investigative techniques and procedures.  As to the first four redactions, all under Exemptions 6 and 7(c), the FBI has not met its burden in justifying why the exemptions are applicable.

      22.  <u>Document 22 – April 25, 2014 Overview of 9/11 Investigation PowerPoint</u>
           <u>(Broward Bulldog 1496–1556)</u>

      The next disputed document is an April 25, 2014 PowerPoint presentation titled Overview of 9/11 Investigation.  (*See Ex Parte* . . . Documents [ECF No. 97-2] 1–61; *see also* Second Resp., Ex. 1 [ECF No. 73-3] 1–56).  The presentation "covers the hijackers, where they attended flight school, how they adapted to Western life and blended in, and known co-conspirators."  (Second Resp. 39–40).  Plaintiffs state this document is particularly important because it discusses funding for the September 11 attacks, and they believe "the Saudi government [funded the attacks] and the FBI is covering it up."  (*Id.* 40 (alteration added)).  The FBI invokes Exemptions 3, 5, 6, 7(C), and 7(E) to make redactions and withhold some of the PowerPoint slides.  (*See Ex Parte* . . . Documents [ECF No. 97-2] 1–61).

      A few slides have redactions under Exemptions 6 and 7(C).  The first slide is Broward Bulldog 1507; it redacts the names of two airline agents.  (*See* Second Resp., Ex. 1 [ECF No. 73-3] 15).  The FBI explains it is protecting names of third parties who "were merely mentioned" because they "came into contact with subject[s] of FBI" investigations.  (Fifth Hardy Decl. ¶ 31 (alteration added)).  The two redactions on Broward Bulldog 1507 are justified under Exemptions 6 and 7(C) because these two individuals, who are merely mentioned in the PowerPoint, have "substantial and legitimate privacy interests in not having this information disclosed."  (*Id.*).  The rest of the redactions under Exemptions 6 and 7(C) are not justified because the redactions contain information regarding suspects and subjects of interest in the September 11 attacks (*see Ex Parte* . . . Documents [ECF No. 97-2] 23, 40–41, 55, 59), and the

public interest in learning about these individuals outweighs any privacy interest they may have. Accordingly, summary judgment is denied with respect to these redactions.

The majority of the redactions in the PowerPoint are made under Exemption 7(E) to protect FBI investigative techniques and procedures. (*See generally Ex Parte* . . . Documents [ECF No. 97-2] 1–61). After reviewing the material redacted under Exemption 7(E), the Court notes much of it does not discuss any FBI investigative techniques and procedures; instead the material often encompasses facts and information gathered about FBI suspects. (*See, e.g.*, *Ex Parte* . . . Documents [ECF No. 97-2] 19, 24). The FBI explains it is protecting methods it uses to collect and analyze data. (*See* Second Hardy Decl. ¶ 78). Yet, there is no discussion of FBI investigative techniques or methods used to collect data; instead there is a summary of information and facts about FBI suspects. Accordingly, the FBI has failed to meet its burden in establishing Exemption 7(E) applies to the redacted information.

As to Exemption 3, it is properly applied to withhold information classified under the National Security Act. (*See Ex Parte* . . . Documents [ECF No. 97-2] 46; Second Hardy Decl. ¶ 46). Last, the redactions under Exemption 5 appropriately protect FBI deliberations, recommendations, and decisions. (*See Ex Parte* . . . Documents [ECF No. 97-2] 55, 58–60). However, on Broward Bulldog 1551 and 1552, where both Exemptions 5 and 7(E) are applied (*see Ex Parte* . . . Documents [ECF No. 97-2] 56–57), summary judgment is denied because the Court cannot ascertain what information falls under each exemption. There appears to be no information falling under Exemption 5 on these two pages, and Exemption 7(E) is not applicable because there is no discussion of FBI methods; what appears is mostly a summary of facts and data. (*See id.* 56). However, on the other pages where both Exemptions 5 and 7(E) are asserted, it is readily discernible the information is properly withheld under Exemption 5.

23. <u>Document 23 – First Meese Commission Draft Report (Broward Bulldog 1579–
1721)</u>

This document is a 143-page draft of the Meese Commission Report.[17]  (*See* Third Resp.

Ex. 1 [ECF No. 87-1] 1–3).  The Government explains it withheld the entire report under

Exemption 5 because the draft contains advisory opinions, recommendations, and deliberations;

other portions of the draft are "subject to additional exemptions."  (Third Reply 2).  Plaintiffs

assert the final Meese Commission report was released to the public and therefore the draft

should also be released because according to one of the Commission members, the FBI changed

very little in the report and only classified some pages before releasing the report to the public.

(*See* Third Resp. 9).

"Draft documents, by their very nature, are typically predecisional and deliberative."

*Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983).  "They reflect only the

tentative view of their authors; views that might be altered or rejected upon further deliberation

either by their authors or by superiors."  *Id.* (citation and internal quotation marks omitted).  And

even when "[t]here may be no final agency document because a draft died on the vine. . . .

[T]he draft is still a draft and thus still pre-decisional and deliberative."  *Nat'l Sec. Archive v.

C.I.A.*, 752 F.3d 460, 463 (D.C. Cir. 2014) (citation omitted; alterations added).

To protect drafts from disclosure, an agency "carries its normal burden of demonstrating

that withheld materials are both predecisional and deliberative."  *Nat'l Sec. Counselors v. C.I.A.*,

206 F. Supp. 3d 241, 278 (D.D.C. 2016) (citations omitted).  The FBI has met its burden here,

explaining the drafts "contain numerous edits, comments, and suggested changes reflecting intra-

agency recommendations, analyses, opinions, and other non-factual information typical of a

---

[17] The Government hand-delivered the document to the Clerk of Court because it contains classified
information and was therefore not filed on CM/ECF.  (*See* Defendants' Response to Order [ECF No. 94]
2).

deliberative decision-making process." (Fifth Hardy Decl. ¶ 33). Hardy states the drafts "represent deliberations between FBI personnel as they worked to compile the final draft of the FBI's classified version of the report." (*Id.*). Hardy further explains disclosure would harm the FBI because it would inhibit frank discussions and "stifle its decision-making process," as well as create public confusion because "there is likely conflicting, inaccurate information in the draft copies, or information that does not adequately [summarize] the FBI's final findings." (*Id.* ¶¶ 34–35 (alteration added)).

The Government has met its burden in demonstrating the withheld Meese Commission draft report is properly exempt under Exemption 5. The draft contains FBI predecisional and deliberative information, and thus summary judgment is appropriate.

### 24. Document 24 – Second Meese Commission Draft Report (Broward Bulldog 1722–1858)

This document is also a draft of the Meese Commission report. [18] (*See* Third Resp. Ex. 1 [ECF No. 87-1] 10–17). The Court has reviewed the document, along with the Hardy Declarations (*see, e.g.*, Fifth Hardy Decl.), and for the reasons discussed in the Document 23 analysis, summary judgment is granted.

### 25. Document 25 – Interview Cover Page (Broward Bulldog 1568)

This document is a cover page with the name of an individual and the word "Interview" written underneath. (*See Vaughn* Index [ECF No. 76-18] 16; *see also* Third Resp. Ex. 1, 19). The FBI explains the name is redacted under Exemptions 6 and 7(C) because the "FBI has not disclosed the nature of its investigative interest of the individual in this context" and release of the name "in relation to [the] 9/11 attacks[] would cast this individual in an extremely negative

---

[18] The Government hand-delivered the document to the Clerk of Court because it contains classified information and was therefore not filed on CM/ECF. (*See* Defendants' Response to Order [ECF No. 94] 2).

light." (*Vaughn* Index [ECF No. 76-18] 16 (alterations added) (citing Second Hardy Decl. ¶ 58)). According to Plaintiffs, "the names of the targets of the interviews [are] already a public record and therefore no privacy interests can justify the continued redaction of the title of the interview." (Third Resp. 13 (alteration added)). Whether the name is already in the public domain, the FBI fails to explain why this particular individual's name deserves protection and how disclosure would constitute a "clearly unwarranted" invasion of the person's privacy. *Rose*, 425 U.S. at 382. Additionally, there is significant public interest in knowing who the FBI investigated regarding the September 11 attacks. Hence, summary judgment is denied.

26. Document 26 – September 15, 2001 Interview (Broward Bulldog 1569–1571)

This document summarizes information provided by an individual to the FBI regarding Mohamed Atta and Marwan al-Sheehi, "two of the hijackers who visited the al-Hijji family prior to September 11, 2001." (Third Resp. 13; *see also Vaughn* Index [ECF No. 76-18] 17–19). The individual's name, along with other identifying information, as well as the name of an FBI special agent and local law enforcement personnel, are all redacted under Exemptions 6 and 7(C). (*See Vaughn* Index [ECF No. 76-18] 17–19). The FBI explains the individual's name and information were redacted because the person was of "investigative interest," and releasing the name in connection with the September 11 attacks would cast the person in "an extremely negative light." (*Vaughn* Index [ECF No. 76-18] 18 (citing Second Hardy Decl. ¶ 58)). As to the FBI agent and local law enforcement officers' names, the FBI argues their names have not been released to the public in connection with this investigation and releasing them would constitute an invasion of privacy. (*See id.* 19 (citing Second Hardy Decl. ¶¶ 59–60; Fourth Hardy Decl. ¶ 25)).

According to Plaintiffs, "[t]he FBI has made no showing . . . disclosure of the identity of a witness who had incidental contact with Atta and al-Sheehi would constitute a clearly unwarranted invasion of this source's privacy or even that this source expected confidentiality." (Third Resp. 13 (alterations added)).   They further contend, "[p]ublic interest in who is responsible for the events of 9/11 and how our law enforcement and intelligence communities reacted obviously is of the highest importance" (*id.* 14 (alteration added)), particularly now that "families of the victims of the 9/11 attacks" are suing in federal court (*id.*).

As in other instances where the Government asserts Exemptions 6 and 7(C), the Court is unable to determine how and why the exemptions apply.   The information is of significant public interest, and the public interest may very well outweigh any privacy interests these individuals may have.   Accordingly, summary judgment is denied for the redactions in this document.

27.   Document 27 – April 19, 2004 Interview (Broward Bulldog 1572–1577)

This document summarizes information the FBI received from an individual in an interview regarding the September 11 attacks.   (*See Vaughn* Index [ECF No. 76-18] 20–27).   The FBI redacts portions of the document under Exemptions 6, 7(C), and 7(D).   (*See generally id.*). Plaintiffs describe the document as an interview of Wissam Taysir Hammoud "in which Hammoud reports to the FBI in 2004 that Abdulaziz told him that his hero was Osama bin Laden"; "he planned to become a mujahedin (one who engages in jihad) in Afghanistan"; and Al-Hijji was a friend of "one of the FBI's most wanted suspects in connection with the September 11 attacks."  (Third Resp. 15–16).

Plaintiffs contend the information should be released because representatives from the Sarasota County Sheriff's Office and the Florida Department of Law Enforcement also participated in this interview of Hammoud with the FBI, and "the FDLE released its notes of the

interview to the Bulldog with very few redactions . . . in accordance with the requirements of the Florida Public Records Law." (*Id.* 16 (alteration added)). Because most of the information is in the public domain and Plaintiffs know the information, Plaintiffs argue "the FBI has no basis" for the redactions, and any privacy interest is outweighed by the public's interest in the information. (*Id.* 17–18).

According to the FBI, even if the information is already in the public domain because it was "released by the Florida Department of Law Enforcement and reported by news media," Plaintiffs "have not shown" the "FBI previously disclosed the specific information redacted from the documents at issue." (Third Reply 6). The Government argues even if the information is in the public domain, it may still invoke the FOIA privacy exemptions. (*See id.*). The FBI further contends disclosure would not "further the stated public interest, but *would* subject the individuals to . . . harms." (*Id.* 8 (emphasis in original; alteration added)).

As stated in the February 27 Order (*See* February 27 Order 12–15), the Government's argument with regard to the privacy exemptions is unconvincing — "[o]ne can have no privacy interest in information that is already in the public domain." *Citizens for Responsibility & Ethics in Wash. I*, 840 F. Supp. 2d at 233 (alteration added). Moreover, release of this information could further the public interest in learning about the September 11 attacks and may outweigh any privacy interest individuals mentioned in the document may have.

As to Exemption 7(D), it is invoked simultaneously with Exemptions 6 and 7(C) throughout the document. (*See Vaughn* Index [ECF No. 76-18] 20–27). The FBI asserts it is protecting identifying information about an individual who provided information under an implied assurance of confidentiality. (*See generally id.*). Because this exemption is invoked simultaneously with Exemptions 6 and 7(C), the Court is unable to determine what specific

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

information the Government seeks to protect under Exemption 7(D). Accordingly, summary judgment is denied.

### 28. Document 28 – August 31, 2004 Memorandum (Broward Bulldog 1578)

The last disputed document is a one-page memorandum titled 2004 Threat Task Force Intelligence Requirements. (*See id.* 28). It discusses a "subject" that has "not been interviewed regarding intelligence requirements" because he "is currently residing in Saudi Arabia," and "has been residing outside the United States for approximately the past two and a half years." (*Id.*). Plaintiffs believe the "subject" being discussed is either Abdulaziz al-Hijji or Esam Ghazzawi. (*See* Third Resp. 18). The FBI invokes Exemptions 6, 7(C), and 7(E) for the multiple redactions. (*See Vaughn* Index [ECF No. 76-18] 28). Here, again, the FBI fails to justify the applicability of Exemptions 6 and 7(C). With regard to Exemption 7(E), the FBI has met its burden because it properly explains the redacted block protects sensitive FBI file numbers, the release of which could cause suspects to "change their pattern of activity to avoid detection" and circumvent the law. (*Id.* (citing Second Hardy Decl. ¶ 80)).

### IV. CONCLUSION

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** that Defendants' Second MSJ **[ECF No. 66]** and Third MSJ **[ECF No. 83]** are **GRANTED in part** and **DENIED in part**. The parties have until **May 25, 2017** to file a joint status report advising how they wish to proceed to conclude the case, and if a trial is to be held, to propose a trial period.

**DONE AND ORDERED** in Miami, Florida, this 16th day of May, 2017.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record